## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BECKLEY DIVISION

**THOMAS WILLIAM DYER, JR.**

       **Movant,**

**v.**                           **Case No. 5:14-cv-19140**
                                       **Criminal Case No. 5:13-cr-00107**

**UNITED STATES OF AMERICA,**

       **Respondent.**

### PROPOSED FINDINGS AND RECOMMENDATIONS

Pending before the Court are Movant Thomas William Dyer, Jr.'s ("Dyer") *pro se* Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255, (ECF No. 50), Dyer's Motion to Proceed In Forma Pauperis, (ECF No. 52), and Respondent's Motion to Dismiss Movant Thomas William Dyer, Jr.'s Motion to Vacate, Set Aside, or Correct Sentence Pursuant to U.S.C. § 2255, (ECF No. 64).[1] This matter is assigned to the Honorable Irene C. Berger, United States District Judge, and by Standing Order has been referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Having thoroughly considered the record, the undersigned determines that Dyer clearly is not entitled to relief under 28 U.S.C. § 2255;

---

[1] The docket entries referenced throughout this PF & R are taken from proceedings of record in Dyer's criminal case and cite to Case No. 5:13-cr-00107. Respondent's Motion to Dismiss also requested a stay of the undersigned's prior order requiring Respondent to answer Dyer's § 2255 motion. The undersigned previously denied Respondent's motion for a stay.

1

therefore, the undersigned **FINDS** that Dyer is not entitled to an evidentiary hearing and respectfully **RECOMMENDS** that his § 2255 Motion be **DENIED**, as it lacks merit. In addition, the undersigned **RECOMMENDS** that Dyer's Motion to Proceed In Forma Pauperis be **DENIED** as moot, Respondent's Motion to Dismiss Dyer's § 2255 Motion be **DENIED** as moot, and this matter be **DISMISSED**, with prejudice, from the docket of the Court.

## I.   Factual and Procedural Background

On April 2, 2013, a federal grand jury sitting in Charleston, West Virginia returned an indictment charging Dyer with two counts of distributing a quantity of hydromorphone (Counts One and Two), one count of distributing oxycodone (Count Three), one count of possession with intent to distribute a quantity of oxycodone (Count Four), and one count of using or carrying a firearm during and in relation to a drug trafficking crime, (Count Five). (ECF No. 1 at 1-5). CJA Panel Attorney Sante Boninsegna, Jr., was appointed to represent Dyer on the charges contained in the indictment; however, after Dyer's arraignment and detention hearing, Boninsegna was relieved, and CJA Panel Attorney Thomas Rist ("Rist") was appointed to represent Dyer. (ECF Nos. 16 & 24).

On July 9, 2013, Dyer signed a written plea agreement whereby he agreed to plead guilty to Count Five, the firearm count, in exchange for the dismissal of the remaining four counts contained in the indictment. (ECF No. 35 at 2, 8). The plea agreement indicated that the mandatory minimum term of imprisonment for Count Five was five years' imprisonment and that the maximum penalty was life imprisonment. (*Id.* at 2). In addition, the plea agreement contained an appeal and collateral attack waiver provision, which excepted claims based on ineffective assistance of counsel. (*Id.* at 5-6). Attached to the plea agreement was a stipulation of facts, which Dyer signed the same day. (*Id.* at 9-

2

10). In this, Dyer stipulated that, on January 20, 2013, he carried a loaded .38 caliber semiautomatic pistol "at the time that he possessed a quantity of oxycodone which he intended to distribute."[2] (*Id.* at 9).

On July 25, 2013, the presiding District Judge conducted Dyer's plea hearing. (ECF No. 62). At that hearing, Dyer stated that he wished to plead guilty to Count Five of the indictment. (*Id.* at 2). The Court inquired of Rist whether he had discussed potential defenses and potential sentences with Dyer, and Rist answered in the affirmative. (*Id.* at 5). Respondent's counsel then summarized the terms of the plea agreement, acknowledging that Dyer agreed to plead guilty to Count Five in exchange for dismissal of the other four counts. (*Id.* at 6). Respondent's counsel also made clear that the mandatory minimum term of imprisonment for the firearm count was five years. (*Id.*) The Court then asked if Dyer had any questions about the agreement, and he replied that he did not. (*Id.* at 9). Dyer informed the Court that he wished for the agreement to be accepted. (*Id.* at 10). Next, the Court described what Respondent would have to prove in order to obtain a conviction on Count Five, and in light of that information, Dyer asserted that he considered himself to be guilty of the offense. (*Id.* at 12-13). Dyer stated that he was carrying a pistol in his back pocket when he was arrested on January 20, 2012. (*Id.* at 14). The Court then invited Dyer to elaborate:

> The Court: ... And did you use or carry that firearm in connection with a drug trafficking offense?
>
> The Defendant: Yes.
>
> The Court: And tell me about that, please.

---

[2] The indictment lists the offense date for Count Five as January 20, 2012, (ECF No. 1 at 5), and Dyer indicated at his plea hearing that he was arrested on January 20, 2012, (ECF No. 62 at 14).

The Defendant: There was drugs being sold in the house I was in and I was the – also there for that purpose.

The Court: You were there did you say for –

The Defendant: For the purpose of selling drugs.

The Court: For the purpose of selling drugs?

The Defendant: Yes, ma'am.

The Court: When you had this firearm in your possession; is that correct?

The Defendant: Yes, ma'am.

The Court: What type of drugs were being sold that you were there for the purpose of selling?

The Defendant: Oxycodone.

The Court: Tablets?

The Defendant: Yes, ma'am.

The Court: Did you have tablets in your possession with the intent to sell them, Mr. Dyer?

The Defendant: Yes, ma'am.

(*Id.* at 14-15).

Dyer subsequently explained that he had no "pills" on him when he was arrested, but conceded that the oxycodone pills found at the house where he was arrested belonged to him and that he had brought them into the house. (*Id.* at 16-17). Dyer also admitted that he was involved in trafficking those oxycodone pills. (*Id.* at 17). In addition, the Court asked Dyer whether he was carrying a firearm during the trafficking of the "pills," and Dyer responded, "That's how I got the pistol, yes, ma'am." (*Id.*) Respondent's counsel then proffered that Dyer had been arrested outside of a home owned by Freddie Lumbo and,

at the time of the arrest, Dyer possessed a pistol in his rear pocket along with pre-recorded drug buy money from a controlled oxycodone purchase that occurred earlier in the day. (*Id.* at 18). After executing a search warrant on Lumbo's home, officers found Dyer's jacket inside, which contained approximately 130 oxycodone tablets. (*Id.*) Dyer confirmed the accuracy of these statements. (*Id.* at 19). With that, the Court found that there was a sufficient factual basis to support Dyer's guilty plea to Count Five. (*Id.* at 21). Next, the Court discussed the potential penalties for a conviction on Count Five; however, it appears from the plea hearing transcript that the Court misspoke and informed Dyer that "by pleading guilty [Dyer] expose[d] [himself] to a maximum term of imprisonment of five years." (*Id.*) The Court subsequently inquired of Dyer whether Rist had discussed the application of the United States Sentencing Guidelines ("Guidelines") with him, and Dyer asserted that Rist had done so. (*Id.* at 25). Dyer also attested that he knew that the Court could impose a sentence different than any estimate that Rist had provided to him. (*Id.*) Further reviewing the plea agreement, the Court ensured that Dyer understood that he was waiving his right to appeal his conviction and sentence as well as any right to wage a collateral attack on his conviction and sentence, unless the collateral proceeding challenged the effectiveness of his counsel. (*Id.* at 27-28). Dyer assured the Court that he had discussed the waiver of appellate rights with his counsel. (*Id.* at 28). Dyer also denied that anyone had to tried to force, coerce, pressure, or talk him into pleading guilty, and he asserted that no additional promises were made to him other than those contained in the written plea agreement. (*Id.* at 33). After being satisfied that Dyer's plea was knowing, voluntary, and supported by a sufficient factual basis, the Court accepted Dyer's guilty plea to Count Five. (*Id.* at 34).

Prior to Dyer's November 13, 2013 sentencing hearing, Rist submitted a

sentencing memorandum to the Court. (ECF No. 43). Therein, Dyer, through counsel, requested that the Court impose the five-year mandatory minimum term of imprisonment for his conviction. (*Id.* at 3). Dyer's Presentence Investigation Report ("PSR") also recognized that the minimum sentence for Dyer's crime was five years' imprisonment. (ECF No. 47 at 8). At the sentencing hearing, the Court again informed Dyer that by accepting the plea agreement, he waived his right to appeal his conviction. (ECF No. 63 at 3). Dyer responded that he understood. (*Id.*) Dyer also confirmed that he had read the PSR and discussed it with Rist. (*Id.* at 3-4). Next, the Court twice advised Dyer that the minimum term of imprisonment for his crime was five years and that the maximum term of imprisonment was life. (*Id.* at 8-9). When provided an opportunity to speak on Dyer's behalf, Rist asked that the Court follow the Guidelines and impose a five-year prison term. (*Id.* at 12). Ultimately, the Court sentenced Dyer to the minimum term of five years' imprisonment and three years' supervised release. (*Id.* at 17). The Court entered a judgment reflecting Dyer's conviction and sentence that same day. (ECF No. 46). Dyer did not appeal his conviction and sentence to the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit").

On June 23, 2014, Dyer filed the instant motion pursuant to 28 U.S.C. § 2255, alleging two grounds for relief. (ECF No. 50 at 4-7). First, Dyer contends that he is actually innocent of possessing a firearm in relation to a drug trafficking crime. (*Id.* at 4). Specifically, Dyer argues that he did not "use" or "carry" a firearm during and in relation to a drug trafficking crime, which is the prong of 18 U.S.C. § 924(c)(1)(A) to which he pled guilty. (ECF No. 51 at 7). Dyer insists that he traded "several controlled substance pills for a firearm," and that he did not "carry" the firearm while he committed the drug sale in this case. (*Id.*) As such, Dyer argues that Respondent failed to prove that he committed a

violation of 18 U.S.C. § 924(c)(1)(A). (ECF No. 51 at 7). In support of ground one, Dyer cites *Alleyne v. United States*, ____ U.S. ____, 133 S.Ct. 2151, 186 L.Ed.2d 314 (2013), and *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). (ECF No. 50 at 4; ECF No. 51 at 2-3). Second, Dyer claims that he received ineffective assistance of counsel because Rist failed to appeal his sentence to the Fourth Circuit after Dyer specifically requested that Rist file an appeal. (ECF No. 50 at 5; ECF No. 50-1 at 1-2; ECF No. 51 at 2). Dyer asserts that Rist informed him before the sentencing hearing that he would receive twenty-seven to thirty-three months' imprisonment, not sixty months, and thus, Dyer requested that Rist appeal the sentence imposed by the Court. (ECF No. 50-1 at 1; ECF No. 51 at 2). According to Dyer, Rist initially indicated that he would appeal the sentence, but later told Dyer that it would be a "wast[e]" of time. (ECF No. 50-1 at 2). In his memorandum in support of his § 2255 motion, Dyer also argues that his conviction and sentence are "procedurally unreasonable because the district court utilized unreliable multiple hearsay evidence." (ECF No. 51 at 3). In addition, Dyer claims that the indictment in his case was insufficient because (1) it did not list drug quantities; (2) it failed to describe the sentence to be imposed under 18 U.S.C. § 924(c)(1)(A); and (3) it did not contain "the penalty for the drug quantity for Sentencing Guidelines" purposes. (ECF No. 51 at 4).

On October 9, 2014, the undersigned ordered Rist to file an affidavit responding to Dyer's specific claims of ineffective assistance of counsel. (ECF No. 55 at 6). Rist filed his affidavit on November 5, 2014, wherein he asserts that, prior to Dyer's acceptance of the plea agreement, he informed Dyer of the allegations contained in the indictment and the possible penalties should Dyer's case proceed to trial on all of the counts listed in the indictment. (ECF No. 57 at 1). Rist also recalls receiving "substantial documentary

discovery" from Respondent and providing those documents to Dyer. (*Id.*) This evidence showed that Dyer sold an oxycodone tablet to an informant while at Lumbo's house on January 20, 2012. (*Id.* at 2). Dyer was subsequently arrested outside of Lumbo's home, and at the time of his arrest, Dyer was carrying a firearm. (*Id.* at 2). Dyer also admitted to owning a coat in Lumbo's home, which contained eighty-nine diazepams and 113 oxycodone tablets. (*Id.*) Rist recounts that he met with Dyer to discuss the plea offer proposed by the United States along with the discovery provided to Rist and any potential defenses at trial. (*Id.* at 3). Rist again met with Dyer after "research[ing] the potential outcomes of trial versus taking a plea agreement and the application of the Federal Sentencing Guidelines to both of these decisions." (*Id.*) At that meeting, Dyer decided to accept the plea deal. (*Id.*) Rist denies ever telling Dyer that "he had to take a plea in the instant case," and insists that Dyer accepted the plea agreement "upon his own free will." (*Id.* at 3-4). After the sentencing hearing, but before Dyer was transported back to the Southern Regional Jail, Rist asked Dyer whether he wished for Rist to file an appeal. (*Id.* at 4). Dyer instructed Rist not to file an appeal, and Rist believed that this choice was logical because "the sentence entered by the Court was anticipated and expected by [Dyer]." (*Id.*) Rist asserts that Dyer never contacted him again after the hearing. (*Id.*)

On April 16, 2015, the undersigned ordered Respondent to answer Dyer's § 2255 motion. (ECF No. 60 at 1). On April 29, 2015, Respondent filed a motion to dismiss and a motion to stay the undersigned's April 2015 order requiring Respondent to file an answer until the Court ruled on Respondent's motion to dismiss. (ECF No. 64). The undersigned subsequently denied Respondent's motion to stay, and Respondent filed its answer on May 26, 2015. (ECF Nos. 65 & 66). Therein, Respondent argues that Dyer knowingly and voluntarily agreed to waive his appellate and collateral attack rights by virtue of the

written plea agreement. (ECF No. 66 at 5-8). Furthermore, Respondent contends that Dyer cannot demonstrate actual innocence as Dyer executed a written stipulation of facts addressing each element of the offense for which he was convicted. (*Id.* at 8). Respondent also asserts that Dyer's statements at the plea hearing establish his guilt. (*Id.*) Additionally, Respondent points out that Dyer admitted his guilt in his § 2255 motion when he conceded that he traded drugs for firearms. (*Id.* at 8-9). Finally, in response to Dyer's ineffective assistance of counsel claim, Respondent argues that Dyer was advised multiple times that the mandatory minimum sentence for the firearm conviction was five years' imprisonment and that he was waiving his right to appeal his sentence. (*Id.* at 11-12). Respondent also emphasizes Rist's statement in his affidavit that Dyer's decision not to appeal his conviction and sentence was reasonable in light of Dyer receiving the sentence that he anticipated. (*Id.* at 12-13). Furthermore, Respondent insists that Dyer cannot demonstrate prejudice for any alleged error in filing an appeal because any appeal filed by Rist would have been dismissed as a result of the appeal waiver contained in the plea agreement. (*Id.* at 14).

Dyer was permitted to file a reply to Respondent's response within thirty days after service of the response. (ECF No. 60 at 1). In addition, the undersigned entered an order on May 27, 2015, informing Dyer that he could file a response to Respondent's motion to dismiss within thirty days of receiving that order. (ECF No. 67 at 1). As of February 19, 2016, Dyer has not filed a response or reply.

## II.    **Standard of Review**

A motion made pursuant to 28 U.S.C. § 2255 is a collateral attack on a conviction or sentence that was entered in a separate proceeding. To succeed on such a motion, the movant must prove that the conviction or sentence was imposed in violation of the laws

or Constitution of the United States; or the court imposing the sentence lacked jurisdiction; or the sentence exceeded the maximum authorized by law; or the sentence was otherwise subject to collateral attack. 28 U.S.C. § 2255. "A motion collaterally attacking a prisoner's sentence brought pursuant to § 2255 requires the petitioner to establish his grounds by a preponderance of the evidence." *Sutton v. United States of America,* No. CRIM.A. 2:02CR65, Civ.A. 2:05CV91, 2006 WL 36859, at *2 (E.D. Va. Jan. 4, 2006). Pursuant to the Rules Governing Section 2255 Proceedings for the United States District Courts (hereinafter, "Rules"), the court should conduct a preliminary review of the motion. *See* Rule 4. The court may then order the respondent to answer the motion and may authorize the parties to conduct discovery; the court may also direct the parties to expand the record as necessary to properly assess the validity of the motion. *See* Rules 5, 6, & 7. Once these steps are completed, the court must review the answer, transcripts, records of prior proceedings, and any other materials submitted to determine whether an evidentiary hearing on the motion is warranted. *See* Rule 8(a). If the movant is clearly unable to state a claim that entitles him to relief, the court may deny the motion without an evidentiary hearing. *Raines v. United States,* 423 F.2d 526, 529 (4th Cir. 1970).

## III.   Analysis

### A. Actual Innocence

Beginning with Dyer's actual innocence claim, he argues that he is innocent of using or carrying a firearm during and in relation to a drug trafficking crime. (ECF No. 51 at 7). Dyer insists that he traded "controlled substance pills" for a firearm and that he did not carry the firearm while he committed the drug sale. In making this argument, Dyer is presumably referencing the events preceding his arrest on January 20, 2012. (*Id.*) In support of his actual innocence claim, Dyer cites the Supreme Court's decisions in *Alleyne*

and *Apprendi*. (ECF No. 50 at 4).

Assuming, *arguendo*, that Dyer's claim of actual innocence was not surrendered by the collateral attack waiver contained in the written plea agreement, his claim fails on the merits. Section 924(c)(1)(A) of Title 18 of the United States Code prohibits the use or carrying of a firearm "during and in relation to" a "drug trafficking crime." That provision also proscribes "the possession of a firearm in furtherance of such crimes."[3] *See United States v. O'Brien*, 560 U.S. 218, 221, 130 S.Ct. 2169, 176 L.Ed.2d 979 (2010). The term "drug trafficking crime" includes "any felony punishable under the Controlled Substances Act (21 U.S.C. 801 et seq.)." 18 U.S.C. § 924(c)(2). There are two prongs to the statute—first, the use or carry prong, and second, the possession prong. A person "uses" a firearm within the meaning of the statute if he actively employs the firearm during and in relation to the drug trafficking activity. *Bailey v. United States*, 516 U.S. 137, 148, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995). "Active employment ... includes brandishing, displaying, bartering, striking with, and ... firing or attempting to fire a firearm." *Id.* In addition, the Supreme Court has held that *the receipt of drugs* by a defendant in exchange for a firearm constitutes "use" within the meaning of § 924(c)(1)(A); however, the *receipt of a firearm* by a defendant in exchange for drugs does not constitute "use" within the meaning of the statute. *Watson v. United States*, 552 U.S. 74, 83, 128 S.Ct. 579, 169 L.Ed.2d 472 (2007) (latter situation); *Smith v. United States*, 508 U.S. 223, 237, 113 S.Ct. 2050, 124 L.Ed.2d 138 (1993) (former situation). In other words, when a person trades his firearm to receive drugs, he uses the firearm to obtain the drugs; the converse is not true. Notwithstanding, the Fourth Circuit has held that "§ 924(c)'s possession prong covers drugs-for-firearms

---

[3] "A violation of the statute carries a mandatory minimum term of five years' imprisonment." *See United States v. O'Brien*, 560 U.S. 218, 221, 130 S.Ct. 2169, 176 L.Ed.2d 979 (2010).

trades," including those where the defendant traded his drugs in exchange for a firearm. *United States v. Robinson*, 627 F.3d 941, 955 (4th Cir. 2010). Regarding the "carries" portion of the use or carry prong, the Fourth Circuit has defined "carry" as "knowing possession and bearing, movement, conveyance, or transportation of the firearm in some manner." *United States v. Mitchell*, 104 F.3d 649, 653 (4th Cir. 1997). The "during and in relation to" language of the use or carry prong means that "the firearm must have some purpose or effect with respect to the drug trafficking crime; its presence or involvement cannot be the result of accident or coincidence." *Smith*, 508 U.S. at 238.

In this case, Dyer agreed to a written stipulation of facts stating that he carried a loaded firearm "at the time he possessed a quantity of oxycodone which he intended to distribute." (ECF No. 35 at 9). Furthermore, at his plea hearing, Dyer admitted that he was at Lumbo's house to sell drugs and that he was carrying a firearm on him at that time. (ECF No. 62 at 14). Dyer also conceded at the hearing that the oxycodone tablets found in Lumbo's home belonged to him and that he intended to sell them. (*Id.* at 15-17). As the Court concluded at the plea hearing, this factual basis supports a finding that Dyer carried a firearm during and in relation to a drug trafficking offense. Specifically, Dyer carried a pistol while he possessed oxycodone tablets located inside Lumbo's home, and he intended to sell those tablets, which constitutes a drug trafficking offense under 21 U.S.C. § 841(a)(1). Moreover, it strains credulity to believe that Dyer's possession of the pistol at a drug house was an accident or coincidence. Therefore, Dyer's conduct violated the use or carry prong of § 924(c)(1)(A).

The Supreme Court's decisions in *Alleyne* and *Apprendi* do not help Dyer's cause. In *Alleyne*, the Court held that "any fact that increases the mandatory minimum [sentence] is an element [of the offense] that must be submitted to the jury." 133 S.Ct. at

2155 (markings omitted). Reaching its decision, the *Alleyne* Court relied on its past holding in *Apprendi* that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. In this case, by pleading guilty to the firearm charge and admitting to the facts supporting his conviction, Dyer "waived his right to a jury determination" on the issue and established his guilt beyond a reasonable doubt. *See United States v. Harris*, 543 F. App'x 587, 589 (7th Cir. 2013). After Dyer's guilty plea, the Court was not required to submit any fact to a jury; Dyer's admissions in the written plea agreement and at the plea hearing were sufficient to establish the application of the mandatory minimum sentence. *See United States v. Yancy*, 725 F.3d 596, 601 (6th Cir. 2013); *Billups v. Deboo*, No. 2:14-CV-7, 2014 WL 4102479, at *2 (N.D.W.Va. Aug. 13, 2014). Thus, *Alleyne* and *Apprendi* are inapposite to Dyer's case.

Because Dyer has failed to demonstrate that he was wrongly convicted of violating § 924(c)(1)(A), his actual innocence claim must be rejected. Indeed, the facts described in the written stipulation and adduced at the plea hearing establish that Dyer committed an offense under the use or carry prong of § 924(c)(1)(A). Moreover, Dyer has admitted in his § 2255 motion that he, at the very least, violated the possession prong contained in § 924(c)(1)(A), which carries with it the same five-year mandatory minimum sentence as the use or carry prong. *See Robinson*, 627 F.3d at 955. Therefore, the undersigned **RECOMMENDS** that ground one of Dyer's § 2255 motion be **DENIED**.

### B. Ineffective Assistance of Counsel

Turning to Dyer's ineffective assistance of counsel claim related to Rist's alleged failure to file a notice of appeal at Dyer's request, it is well-settled in the Fourth Circuit that "a criminal defense attorney's failure to file a notice of appeal when requested by his

13

client deprives the defendant of his Sixth Amendment right to the assistance of counsel, notwithstanding that the lost appeal may not have had a reasonable probability of success." *United States v. Peak*, 992 F.2d 39, 42 (4th Cir. 1993); *see also United States v. Witherspoon*, 231 F.3d 923, 926 (4th Cir. 2000). This principle remains true even where a criminal defendant has accepted a plea agreement containing an appeal waiver provision or there is a possibility that an appeal may result in the defendant receiving a higher sentence. *United States v. Glover*, 363 F. App'x 989, 990-91 (4th Cir. 2010); *United States v. Poindexter*, 492 F.3d 263, 271-73 (4th Cir. 2007); *Monroe v. United States*, No. 3:10-cv-00866, 2011 WL 7021200, at *9 (S.D.W.Va. Nov. 4, 2011), *report and recommendation adopted by* 2012 WL 112552 (S.D.W.Va. Jan. 12, 2012). If a defendant's counsel runs afoul of this rule, the proper procedure is for the district court to vacate its previous judgment, enter a new judgment from which the defendant may file an appeal, dismiss any remaining claims in the § 2255 motion without prejudice, and appoint counsel to assist the defendant on direct appeal. *United States v. Killian*, 22 F. App'x 300, 301 (4th Cir. 2001); *Aldana v. United States*, No. 1:09cv461, 2010 WL 2860527, at *2 (W.D.N.C. July 19, 2010); *see also Peak*, 992 F.2d at 42 (instructing district court to vacate movant's judgment of conviction and enter new judgment from which appeal could be taken).

The Fourth Circuit has recognized that "[w]hen a § 2255 movant asserts an ineffective assistance of counsel claim based on counsel's failure to note an appeal, the district court generally must hold an evidentiary hearing before finding that the movant did not unequivocally instruct counsel to file a notice of appeal." *United States v. Lloyd*, ____ F. App'x ____, 2016 WL 519107, at *1 (4th Cir. Feb. 10, 2016) (citing *Poindexter*, 492 F.3d at 269, and *Witherspoon*, 231 F.3d at 926-27); *see also United States v. Speed*, ____

14

F. App'x ____, 2016 WL 123643, at *2 (4th Cir. Jan. 12, 2016) (stating that district court should have held evidentiary hearing on movant's claim that he instructed counsel to file notice of appeal before denying claim); *United States v. Diaz*, 547 F. App'x 303, 304 (4th Cir. 2013) (holding that district court abused its discretion by failing to conduct evidentiary hearing on movant's claim that counsel failed to follow movant's instruction that notice of appeal be filed); *United States v. Moore*, 204 F. App'x 250, 251 (4th Cir. 2006) ("When a movant presents a colorable Sixth Amendment claim showing disputed facts beyond the record and a credibility determination is necessary to resolve the issue, an evidentiary hearing in open court is required."). However, this general rule is not without exception. Indeed, § 2255(b) states that an evidentiary hearing is unnecessary where the "motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." Similarly, the Fourth Circuit has explained that an evidentiary hearing on a § 2255 motion is unwarranted where the movant's allegations are "palpably incredible" or "patently frivolous or false." *United States v. Lemaster*, 403 F.3d 216, 220 (4th Cir. 2005) (quoting *United States v. White*, 366 F.3d 291, 296 (4th Cir.2004)); *see also Williams v. United States*, No. 2:00-01161, 2010 WL 1878161, at *2 (S.D.W.Va. May 7, 2010) (declining to hold evidentiary hearing where movant's claim that he instructed counsel to file appeal was "palpably incredible"); *Lewis v. United States*, No. L-05-1158, 2008 WL 1992214, at *5 n.3 (D. Md. May 2, 2008) (same); *Freeman v. United States*, No. 3:00-1176, 2006 WL 2456357, at *3 (S.D.W.Va. Aug. 22, 2006) (same). Put simply, where a § 2255 movant's allegations are so incredible that an evidentiary hearing would not aid the district court in deciding the § 2255 motion, the interests of judicial economy dictate that a hearing not be conducted. Although it may be the rare case in which conflicting affidavits are sufficient to resolve a question of credibility, such cases

15

exist nonetheless. *See United States v. Santana*, 263 F. App'x 334, 335 (4th Cir. 2008) ("[I]t is not *per se* error for a district court to make credibility determinations on the basis of conflicting affidavits ...."). Holding an evidentiary hearing in those cases merely for the sake of holding an evidentiary hearing would squander scarce judicial resources that may be better utilized elsewhere.

Having reviewed the entire record and the affidavits provided in this case, the undersigned concludes that this is one of the exceptional cases where an evidentiary hearing is not required. Dyer's assertion that he directed Rist to file an appeal is unquestionably implausible and utterly belied by the record. Dyer claims in his "Sworn Affidavit" that he instructed Rist to appeal his sentence because the sentence was "twice as much as" he expected to receive after discussing the plea agreement with Rist. (ECF No. 50-1 at 1). Dyer insists that Rist conveyed to him that Respondent had offered a sentence of twenty-seven to thirty-three months' imprisonment as part of the plea agreement. (*Id.*) However, Dyer's contention is wholly contradicted by the record. First, Dyer was made aware in the written plea agreement (which he signed) that the **mandatory minimum** sentence for the firearm charge was five years' imprisonment. (ECF No. 35 at 2). Second, Respondent's counsel explained the same at Dyer's plea hearing, and Dyer confirmed that Rist had discussed with him each paragraph contained in the written plea agreement, which would include the paragraph containing the mandatory minimum sentence. (ECF No. 62 at 6, 9). Third, Dyer's PSR, which he confirmed that he had reviewed with Rist, indicated that the mandatory minimum term of imprisonment for the firearm offense was five years. (ECF No. 47 at 8; ECF No. 63 at 3-4). Fourth, Dyer's own sentencing memorandum, which he undoubtedly would have received, twice requested that the mandatory minimum term of five years' imprisonment

be imposed. (ECF No. 43 at 3). Finally, at Dyer's sentencing hearing, the Court again informed Dyer of the mandatory minimum sentence, and Dyer's counsel asked that the mandatory minimum sentence be imposed. (ECF No. 63 at 8, 12). Not a peep was heard from Dyer when the Court and his attorney discussed the five-year sentence. If Dyer's current version of events were accurate, one would expect Dyer to have loudly and persistently voiced his surprise and concern that the proposed sentence was roughly double what he had anticipated. Instead, Dyer sat quietly, raising no claim that he had been misinformed about his potential sentence. He certainly did not protest that he was promised twenty-seven to thirty-three months in prison. To the contrary, Dyer confirmed at his plea hearing that he *was not* promised anything other than what was contained in the written plea agreement. (ECF No. 62 at 33). Clearly then, Dyer's statement that he told Rist to appeal his sentence because he expected a sentence that was approximately half of the mandatory minimum sentence is palpably incredible. Dyer was informed at every step of the proceedings that he was subject to a five-year mandatory minimum sentence. Given the clarity of the statutory penalty and the Guidelines applicable to Dyer's offense, it is unfathomable that Rist or Respondent's counsel would have told Dyer that he could expect a sentence of only twenty-seven to thirty-three months.[4] *See* 18 U.S.C. § 924(c)(1)(A)(i); USSG § 2K2.4(b). While the Court may have inadvertently advised Dyer at his plea hearing that he was subject to a maximum term of imprisonment of five years, (ECF No. 62 at 21), the written plea agreement, Dyer's PSR and sentencing memorandum, and the sentencing hearing all served to fully correct any misconception that Dyer might

---

[4] Not surprisingly, Dyer never mentions any discussion about the "safety valve" under 18 U.S.C. § 3553(f) and USSG § 5C1.2; probably, because such a discussion would never have occurred. Dyer surely could not have anticipated qualifying for the safety valve on any of the charges contained in the indictment since the safety valve does not apply where a firearm is possessed in connection with the offense. *See United States v. Pickens*, 201 F. App'x 143, 146 (4th Cir. 2006).

have labored under.

Furthermore, Rist's affidavit establishes that Dyer's decision to decline pursuing an appeal was logical as the sentence imposed was expected by Dyer. (ECF No. 57 at 4). In light of the discussion above, the undersigned finds Rist's account to be consistent with the record and entirely credible. On the other hand, as a matter of common sense, the undersigned finds Dyer's allegations to be patently false. Dyer was charged with five serious felonies in this case that carried the potential of substantial prison time. The maximum penalty for the offense to which Dyer ultimately pled guilty was life imprisonment. Dyer's receipt of a five-year sentence for his conviction was a very favorable outcome. Indeed, it was the best sentence that he could hope to receive. It is difficult to imagine that Dyer would have wished to disturb an ideal resolution of his case by filing an appeal in violation of his plea agreement. For these reasons, the undersigned concludes that Dyer is not entitled to an evidentiary hearing on his failure to file an appeal claim and that Dyer's claim that he instructed Rist to file a notice of appeal is without merit.

However, that is not the end of the matter. Dyer also seemingly argues, as an alternative claim, that Rist was ineffective for failing to consult with him after sentencing about the potential for filing an appeal. (ECF No. 50 at 5; ECF No. 51 at 5). "In *Roe v. Flores-Ortega*, 528 U.S. 470, 477-80, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000), the Supreme Court applied *Strickland* [*v. Washington*, 464 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)] to hold that counsel's duty to consult with the defendant generally requires counsel to discuss with the defendant whether to pursue an appeal." *Frazer v. South Carolina*, 430 F.3d 696, 704 (4th Cir. 2005). The Court in *Flores-Ortega* explained that "counsel has a constitutionally imposed duty to consult with the defendant about an

18

appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." 528 U.S. at 480. "In determining whether a rational defendant would have wanted to appeal, [the Fourth Circuit] consider[s] important the facts concerning whether the defendant's conviction followed a trial or a guilty plea; whether the defendant received the sentence bargained for as part of the plea; and whether the plea expressly reserved or waived some or all appeal rights." *United States v. Cooper*, 617 F.3d 307, 313 (4th Cir. 2010). Although a guilty plea is not a "determinative factor" in the analysis, it remains "highly relevant" as "a guilty plea reduces the scope of potentially appealable issues" and "may indicate that the defendant seeks an end to judicial proceedings." *United States v. Gonzalez*, 570 F. App'x 330, 337 (4th Cir. 2014) (quoting *Flores-Ortega*, 528 U.S. at 480). "In addition to showing that counsel's performance in failing to consult was deficient, the movant must also establish prejudice resulting from such failure." *Id.* "To show prejudice ... a defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Flores-Ortega*, 528 U.S. at 484. In discussing the prejudice prong, the Court recognized that this inquiry "is not wholly dissimilar from the inquiry used to determine whether counsel performed deficiently in the first place; specifically, both may be satisfied if the defendant shows nonfrivolous grounds for appeal." *Id.* at 486. "However, in demonstrating prejudice, the defendant is under no obligation to demonstrate that his hypothetical appeal might have had merit." *Gonzalez*, 570 F. App'x at 337 (quoting *Poindexter*, 492 F.3d at 269) (markings omitted). Additionally, prejudice is established where the defendant demonstrates that he had "a reasonably obvious interest in pursuing

an appeal" and that had counsel provided "reasonable advice" concerning an appeal, the defendant would have instructed counsel to file an appeal. *Frazer*, 430 F.3d at 708 (quoting *Flores-Ortega*, 528 U.S. at 486).

Here, there is no reason to believe that Dyer would have wanted to file an appeal, as there are no apparent nonfrivolous grounds for appeal. After multiple discussions with counsel concerning the charges contained in the indictment, Dyer accepted a plea agreement and admitted to the facts underlying the firearm count. The Court then conducted an extensive plea hearing pursuant to Federal Rule of Criminal Procedure 11, and Dyer unequivocally indicated that his guilty plea was knowing and voluntary. Thereafter, the Court sentenced Dyer to the minimum sentence that he could have received. The potential for that sentence was explained to Dyer in the written plea agreement, at the plea hearing (by Respondent's counsel), and at the sentencing hearing. Indeed, Rist's affidavit reflects that he and Dyer expected the mandatory minimum sentence to be imposed. Dyer's acceptance of a beneficial plea agreement, receipt of the minimum sentence set forth in the plea agreement, and waiver of all appellate rights, save any challenge to a sentence in excess of the maximum penalty prescribed by statute, are all factors that indicate that a rational defendant would not have desired to appeal his conviction and sentence. *See Cooper*, 617 F.3d at 313. In addition, a reasonable defense attorney would not expect that a rational client would desire to appeal a beneficial plea bargain requiring a guilty plea to one offense where, in the unlikely event that the guilty plea is set aside, the appeal would breach the agreement and permit the introduction at trial of a stipulation of facts proving his client's guilt on at least one additional offense. (ECF No. 62 at 10).

"In the end, [Rist] could reasonably believe that he had shaped a proceeding that

not only was fair to [Dyer] but also accomplished everything [Dyer] wanted." *Cooper*, 617 F.3d at 314. In other words, Dyer benefitted greatly from the plea bargain attained by Rist and received the minimum sentence for his offense; Dyer's subsequent, ill-advised buyer's remorse cannot play a role in the "rational defendant" analysis. Furthermore, as discussed at length above, the undersigned concludes that Dyer did not reasonably demonstrate to counsel that he was interested in filing an appeal, by direct instruction or otherwise. Accordingly, Dyer cannot establish the first prong of *Strickland* on his failure to consult claim, as described in *Flores-Ortega*.

Dyer also cannot meet the prejudice prong. First, no nonfrivolous grounds for appeal exist in this case. Second, Dyer had no "reasonably obvious interest in pursuing an appeal," since Dyer obtained a generous plea bargain along with the minimum sentence for his crime, which was explained in the written plea agreement. *See Frazer*, 430 F.3d at 708. Therefore, the undersigned finds that Dyer has failed to "demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Flores-Ortega*, 528 U.S. at 484. Accordingly, the undersigned **RECOMMENDS** that ground two of Dyer's § 2255 motion be **DENIED**.

### C. Other Alleged Grounds for Relief

Dyer's memorandum in support of his § 2255 motion contains claims not raised in his motion. (ECF No. 51 at 3-4). These claims are barred by the collateral relief waiver contained in Dyer's written plea agreement. Nevertheless, even considering their merits, Dyer is not entitled to relief. First, Dyer argues that his conviction and sentence are "procedurally unreasonable because the district court utilized unreliable multiple hearsay evidence." (*Id.* at 3). Dyer neither develops this claim nor provides any support for it. It

21

suffices to say that Dyer admitted to his criminal conduct in the written plea agreement and in open court while under oath. Dyer's admissions were adequate to support his conviction and sentence. Next, Dyer claims that the indictment in his case was insufficient because (1) it did not list drug quantities, (2) it failed to describe the sentence to be imposed under 18 U.S.C. § 924(c)(1)(A), and (3) it did not contain "the penalty for the drug quantity for Sentencing Guidelines" purposes. (ECF No. 51 at 4). With respect to any alleged indictment errors, Dyer's guilty plea "acts as a waiver of all nonjurisdictional defects in the indictment." *United States v. Christian*, 184 F. App'x 319, 321 (4th Cir. 2006). Moreover, insofar as Dyer takes issue with the lack of drug quantities in Count One through Count Four, those counts were dismissed. Dyer also has not cited any support for the proposition that an indictment charging a violation of § 924(c)(1)(A) is constitutionally defective for neglecting to list the drug quantity underlying the drug trafficking crime. To the contrary, § 924(c)(1)(A) contains no provision concerning drug quantity. Pursuant to § 924(c)(2), possession with intent to distribute or distribution of any drug quantity that qualifies as a felony under the Controlled Substances Act, 21 U.S.C. 801 *et seq.*, is sufficient to support a charge and conviction under § 924(c)(1)(A). Here, the indictment alleged in Count Five that Dyer possessed with intent to distribute oxycodone, which qualifies as a felony drug trafficking crime under 21 U.S.C. § 841(a)(1) and § 841(b)(1)(C). Furthermore, at his plea hearing, Dyer admitted to possessing with intent to distribute approximately sixty-four oxycodone tablets, (ECF No. 62 at 15, 17), and thus, Dyer relieved Respondent of having to prove any drug quantity to a jury beyond a reasonable doubt. *See Harris*, 543 F. App'x at 589. Finally, to the extent that Dyer complains that the indictment was unclear as to his potential sentence for Count Five, he has provided no authority to support his claim that an indictment must warn a defendant

of his potential sentence under § 924(c)(1)(A). *See United States v. Arms*, No. 14-CR-78, 2015 WL 3513991, at *2 (E.D. Wis. June 3, 2015) (stating potential penalties need not be alleged in indictment), *report and recommendation adopted by* 2015 WL 5022640 (E.D. Wis. Aug. 24, 2015); Fed. R. Crim. P. 7(c)(1) (requiring indictment to contain "plain, concise, and definite" statement of "essential facts constituting the offense charged"). Additionally, the language of the indictment in this case was unequivocal that Dyer was being charged with using and carrying a firearm under 18 U.S.C. § 924(c)(1)(A)(i), not brandishing or discharging the firearm, which would bear harsher penalties. Accordingly, Dyer knew, or should have known, from the indictment that his potential sentence under § 924(c)(1)(A) was a minimum of five years' imprisonment.

For these reasons, the undersigned **RECOMMENDS** that any additional grounds contained in Dyer's memorandum in support of his § 2255 motion be **DENIED**. Furthermore, given the undersigned's conclusion that Dyer's § 2255 motion lacks merit, the undersigned **RECOMMENDS** that Respondent's Motion to Dismiss, which seeks disposition of this § 2255 proceeding on other grounds, be **DENIED** as moot.

## IV.   <u>Proposal and Recommendations</u>

The undersigned respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** as follows**:**

1.   Dyer's Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255, (ECF No. 50), be **DENIED**, as it is without merit;

2.   Dyer's Motion to Proceed In Forma Pauperis, (ECF No. 52), be **DENIED** as moot;

3.   Respondent's Motion to Dismiss Movant Thomas William Dyer, Jr.'s Motion to Vacate, Set Aside, or Correct Sentence Pursuant to U.S.C. § 2255, (ECF No. 64), be **DENIED** as moot; and

4.     This action be **DISMISSED**, with prejudice, and removed from the docket of the Court.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Irene C. Berger, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing parties, Judge Berger, and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to Movant, Respondent, and counsel of record.

**FILED:** February 19, 2016

Cheryl A. Eifert
United States Magistrate Judge